**Slip Op. 99 - 39**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

_____
                                        :
Rautaruukki Oy,                         :
                                        :
       Plaintiff,              :   Consolidated Court
                                        :   No. 97-05-00864
    v.                                :
                                        :
United States,                          :
                                        :
       Defendant,              :
                                        :
    and                               :
                                        :
Bethlehem Steel Corporation,            :
U.S. Steel Group (a Division            :
of USX Corporation),                    :
                                        :
       Defendant-Intervenors.  :
_____:

[Commerce's Remand Results sustained in part; reversed in part.]

Dated: April 27, 1999

    Holland & Knight LLP, (Frederick P. Waite and Kimberly R. Young) for plaintiff and defendant-intervenor Rautaruukki Oy.

    David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, A. David Lafer, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice (Michele Lynch), Myles S. Getlan, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

**OPINION**

**RESTANI, Judge:**

    This matter is before the court following remand to the

United States Department of Commerce ("Commerce") of the Final

Results of its second administrative review of the antidumping

determination in <u>Certain Cut-to-Length Carbon Steel from Finland</u>,

62 Fed. Reg. 18,468 (Dep't Commerce 1997) [hereinafter "<u>Final

Results II</u>"].  Final Results Pursuant to Court Remand, at 1

[hereinafter "<u>Remand Results</u>" or "<u>RR</u>"].  Familiarity with the

court's earlier decision in this case is presumed.  <u>See</u>

<u>Rautaruukki Oy v. United States</u>, No. 97-05-00864, 1998 WL 465219

(Ct. Int'l Trade Aug. 4, 1998).

## Grade "A" Plate Specifications

### Background

Before remand, Commerce stated that in <u>Final Results II</u> it

had considered steel plate classified grade "A" by different

national classification societies as not identical for comparison

purposes because the information offered by Rautaruukki Oy

("Rautaruukki") in response to Commerce Department questionnaires

had proved an inadequate basis from which to determine whether

the merchandise was or was not identical.  <u>Rautaruukki</u>, 1998 WL

465219, at *4.  On the basis of some apparently slight

differences in specifications of certain elements' compositional

ranges, and without evidence of the significance of these

differences, Commerce resorted to what it referred to as its

default position: that without evidence of the insignificance of

these differences, it would consider them significant.  Id. at
*3.

At oral argument, Commerce explained that, although it had
not requested the brochures specifically, what it would have
liked to have examined were not Rautaruukki's comparison charts
displaying information abstracted from the specification
brochures of the national classification societies but the
comprehensive specifications available in the brochures
themselves.  The court acknowledged at that time that the
brochures might provide more detail as to the specifications of
the various national classification societies but questioned
whether Commerce would know any more about the significance of
those differences after examining them.  When the court asked
what evidence Rautaruukki thought it might submit to provide
insight into the commercial significance of any apparent
differences, Rautaruukki suggested, inter alia, the expert
testimony of a metallurgist.

Because Commerce alleged that a factual question existed,
and because it had not been clear about the information it was
seeking from the respondent, the court remanded the case with the
instruction to Commerce to obtain additional grade "A" plate
information from Rautaruukki and to reconsider its decision as to

whether to treat U.S. grade "AB A" steel plate and all other grade "A" plate as identical merchandise.  Id. at *8.

On remand, Commerce requested from Rautaruukki national specification brochures for each national classification society rating grade "A" shipbuilding steel sold in the United States and Finland.  RR, at 1.  Rautaruukki provided Commerce both the current national specifications and those in effect during the period of review.[1]  Id.  Commerce prepared draft remand results on which Rautaruukki submitted comments, along with affidavits of Dr. A.J. DeArdo, the William Kepler Whiteford Professor of Materials and Engineering and Director of the Basic Metals Processing Research Institute at the University of Pittsburgh, and of Mr. Gerrit Johan van Dissel, a practicing Naval Architect and Marine Engineer.  Id.  The affidavits addressed the commercial significance of the specification differences to grade "A" shipbuilding plate, and both concluded that the differences lacked commercial significance.  van Dissel Affidavit, at 4-5; De Ardo Affidavit, at 3-5.

---

[1]    Commerce makes an unsubstantiated argument that changes in the specifications during different periods reflect the commercial significance of the specification differences.  The court cannot regard this as substantial evidence for the alleged significance of the differences without some evidence (e.g. comments by the societies relating their intent in making the changes).  There is no dispute that the specifications relevant to this remand are those in effect during the period of review.

In its Remand Results, Commerce considered steel classified grade "A" by different national classification societies as non-identical merchandise.  RR, at 8.  In response to the court's instruction on remand to explain the significance of the observed specification differences, and in contrast to its earlier position that the significance of the specification differences was material although unproven, Commerce stated,

> It is our position that **any difference** in plate specification, whether large or small, renders merchandise produced to these different specifications as "non-identical" merchandise.  This is a common Department policy in steel plate cases and **is based on industry purchasing practices**.  Customers purchase material that meets a certain specification.  This decision is based on the customer's knowledge of the minimum requirements that the product is guaranteed to meet under certain conditions.  For this reason, the Department uses plate specification, and not actual product characteristics, as its major matching criterion.

RR, at 7 (emphasis supplied).

## Discussion

Because the purpose of the remand in this case was to afford Rautaruukki the opportunity to provide Commerce with the information it alleged it was seeking, the court will address the evidence.  The only evidence in the record regarding actual consumer conduct bearing on the significance of the specifications are the two affidavits submitted by Rautaruukki.

Commerce dismisses this expert testimony as "subjective" and therefore not the kind of "nonsubjective" evidence to which it claims the court referred in its opinion ordering remand.  When the court referred to the absence of "nonsubjective" evidence of consumer conduct,[2] the record contained only Rautaruukki's claims in its narrative responses to Commerce's questionnaires addressing the commercial significance of the carbon range differences.  Unsupported claims by interested parties and testimony of a materials scientist and a naval engineer, both experts familiar with the materials and the market, are not of equivalent status.  Commerce was not entitled to disregard this testimony.  This error is particularly grievous, given that there is no other evidence in the record to the contrary and that Commerce counters the experts' report of insignificance with only its own unsubstantiated assertions to the contrary.

_____

[2]    The court wrote,

      Commerce did not request, and respondent did not
      furnish independently, any nonsubjective evidence from
      which Commerce could determine the significance of
      those differences.  Rautaruukki provided only its own
      assurance that the difference was not commercially
      significant.  While this is evidence, Commerce is not
      required to accept it.  But neither must the court
      regard as substantial evidence seemingly nominal
      differences in chemical composition, the significance
      of which Commerce has not explained.

Rautaruukki, 1998 WL 465219, at *3.

Commerce claims it did not disregard the expert testimony. The agency, however, apparently observed the evidence only to the extent necessary to conclude that it was "subjective" and did not need to be considered. This was not a fair treatment of the material submitted. Accordingly, the court finds that Commerce abused its discretion in failing to consider the only material evidence before it.

Commerce further claims its treatment of grade "A" steel from different national classification societies as most similar, rather than identical, merchandise in Rautaruukki's Second Administrative Review reflects its standard practice of distinguishing identical from most similar merchandise and its standard policy of treating different merchandise differently. RR at 5-7. In Rautaruukki's First Administrative Review, however, Commerce assigned one value to all grade "A" steel plate. See Rautaruukki, 1998 WL 465219, at *2. Thus, it did not consider this "standard practice" to apply during the First Administrative Review. Commerce may view the same facts differently or change its methodologies, but to be in accordance with law, the agency is required to articulate its reasons for the change and accompany these by substantial evidence. Cultivos Miramonte S.A. v. United States, 980 F. Supp. 1268, 1274 (Ct.

Int'l Trade 1997).

Commerce's general defense of its division of subject merchandise into "identical" and "nearly identical" categories, RR, at 10-11, does not support its choice to draw that line anyplace in particular, much less specifically between "AB A" steel and other grade "A" steel. Likewise, Commerce's contention that it may look at specifications rather than actual product characteristics is inapposite, because no one contests this. At issue is whether Commerce has made a reasonable distinction among specifications.

Commerce continues to state that it cannot discern whether the reported seemingly minor differences are commercially significant[3] and claims that it may therefore presume that they are significant. RR, at 8. Nevertheless, Commerce makes its own wholly unsubstantited and inconsistent claims about significance

---

[3]     The agency allows that it is

  because the Department cannot determine which
  particular specification requirements may influence a
  purchasing decision, [that] the Department deems the
  differences in specifications to be significant for
  model-matching purposes. Therefore, the Department
  maintains its position that differences in plate
  specifications are significant and that plate produced
  to different specifications constitutes non-identical
  merchandise.

RR, at 8.

based on unsupported conclusions about consumer conduct.

Commerce refers to its own hypotheses about the market as

evidence of "purchasing practices."  RR, at 8.  The agency

postulates that

> Grade A carbon steel shipbuilding plate is guaranteed
> by the manufacturer based on the specification that it
> meets.  Unless a product is sold as "multi-spec"
> merchandise, meaning that it meets the specifications
> of various classification societies, it is only
> guaranteed for the exact specification for which it was
> sold.  A commercial guarantee provides the customer
> with the known minimum performance requirements for a
> given product.  As mentioned above, not all
> classification societies have the same mechanical or
> chemical requirements, and therefore cannot guarantee
> the product based on the testing requirements of
> another classification society.  For this reason, not
> all specifications of Grade A shipbuilding steel can be
> sold interchangeably as Rautaruukki suggest.

Id., at 7-8.

Defendant argues that carbon range differences can be

significant and can affect strength and "weldability" of steel.

Id., at 7.  Broadly stated, this must be correct, but this

argument as such does not address whether the differences between

the carbon ranges of different classification societies' grade

"A" steel plate are of a magnitude that could render those

effects relevant to consumer selection among steel classified by

different societies.

Although Commerce claims that "not all specifications of

Grade A shipbuilding steel can be sold interchangeably," <u>RR</u>, at 8, the agency also avers that "Commerce was aware during the course of the second administrative review that products manufactured to different specifications are interchangeable," <u>Id.</u>, at 12-13.  Commerce maintains that this latter awareness is not dispositive because "the Department's definition of 'identical' is not synonymous with commercial interchangeability."  <u>Id.</u>, at 12.

Commerce claims that it is not necessarily commercial interchangeability that matters but rather that any difference whatsoever justifies its treatment of subject merchandise as non-identical.[4]  <u>RR</u>, at 12-13.  This position seems inconsistent with other aspects of the <u>Remand Results</u> and perhaps with the agency's prior precedent as to steel model match methodologies.  <u>See</u>, <u>e.g.</u>, <u>AK Steel Corp. v. United States</u>, No. 96-05-01312, 1997 WL 728284, at *13 (Ct. Int'l Trade Nov. 14 1997) (agency treatment of missing product characteristics rested on their commercial insignificance).

Further, this position, which Commerce newly espouses, is

---

[4]     In support, Commerce cites <u>Koyo Seiko Co. v. United States</u>, 66 F.3d 1204, 1210 (Fed. Cir. 1995), in which the Federal Circuit upheld Commerce's treatment of non-commercially substitutable merchandise as identical.  The court fails to see how this permission includes the converse: the treatment of commercially substitutable merchandise as non-identical.

inconsistent with that asserted before remand.  The agency's new view is that, in cases where Commerce matches by specification as opposed to physical characteristics, any difference in specifications of any type means the merchandise is non-identical.  Because the court relied on Commerce's pre-remand position in ordering remand, the court cannot accept this new explanation for purposes of this review.

Before remand, Commerce took the position that specification differences might or might not be significant but that the agency lacked the evidence to determine whether they were.  The court accepted the agency's theory that some specification differences may be important while some may not.  Recognizing that Commerce had not clearly requested of Rautaruukki the information upon which such a determination could be made, the court remanded with the instruction to Commerce to request that information from Rautaruukki.  See Rautaruukki, 1998 WL 465219, *4.  On remand, Commerce did request the information it had reported needing.  In its Remand Results, however, the agency failed to address the evidence submitted or to cite other evidence in the record upon which it could determine whether the reported specification differences were or were not significant.

After remand, Commerce presents its new theory that all

specification differences are significant.  In principle an
agency may change its methodology (or reach different conclusions
based on different fact patterns).  The court does not address
whether the new methodology articulated in the Remand Results
might be permissible in future reviews.  Commerce has introduced
the new method too late for this review.  The introduction of a
new methodology is impermissible when it comes only after a
court-ordered remand to apply the methodology professed by the
agency before remand.  See, e.g., Royal Thai Gov't v. United
States, 18 CIT 277, 285-86, 850 F. Supp. 44, 50-51 (1994) (new
justification advanced only following limited remand
impermissible).

Normally, despite the fact that thus far the evidence
supports only Rautaruukki's position and despite Commerce's
inconsistency and half-hearted attempt to comply with the court's
remand order, the court might permit Commerce to reconsider this
matter again and make some reasoned judgments under the rationale
set forth before remand, but this appears unnecessary and likely
futile in this case.

First, Commerce does not want to consider the significance
of the compositional ranges of certain elements, and to do so
likely would entail significant administrative effort.  Second,

the only information presented to the court as to the practical significance of Commerce's treatment of steel classified grade "A" by different classification societies as non-identical merchandise comes in a footnote to the Remand Results, in which Commerce states that "treating grade A shipbuilding plates produced to different specifications as identical merchandise would not have affected the calculated dumping margin in this case." RR, at 8 n.4.

The court will take Commerce at its word. As Rautaruukki apparently is entitled, on the record developed to date, to have the merchandise treated as identical; as Commerce recognized this as at least one permissible methodology based on essentially the same facts in the first review; and as Commerce alleges no downside, for purposes of this review, Commerce shall treat all grade "A" steel plate as identical merchandise. This will not entail a great deal of effort and will avoid an apparently useless and time consuming exercise.

## Facts Available Margin

In its decision ordering remand, the court directed Commerce to use for total facts available for wide flats and beveled plate products the revised weighted-average duty rate of 40.46 ad valorem. Rautaruukki, 1998 WL 465219, at *8. Commerce

indicates that it has done so.  RR, at 13-14.  As the parties do
not contest this portion of the Remand Results, the court
sustains this re-calculation.


                                    _____
                                         Jane A. Restani
                                              Judge

Dated:     New York, New York
           This    day of April, 1999

**ERRATA**

<u>Rautaruukki Oy v. United States</u>, Consolidated Court No. 97-05-00864, Slip Op. 99-39, dated April 27, 1999.


On p. 8, ln. 15:     change "unsubstantited" to "unsubstantiated"

On p. 9, ln. 19:     change "suggest" to "suggests"


April 28, 1999